# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GALE ROBERTS,

    Plaintiff,

    v.                                                                              No. 18-cv-00975-WJ-LF

GENERATION NEXT, LLC, RICHARD COOK,
Estate of, KATHARINE COOK FISHMAN, PAUL
MATTHEW CASTER, ANTIQUITY ENCOUNTER,
JOHN MELANCON, EXPEDITION RESOURCES, LLC,
EXPLORATION OPES, LLC, DONALD PATTERSON,
GERALD KEMLAR, HOWARD TALKS, WILLIAM FLOTO,
JOHN AND JANE DOES,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING COOK DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court a Motion to Dismiss filed on January 9, 2019 by Defendants Generation Next, LLC, the estate of Richard Cook and Katharine Cook (collectively, "the Cook Defendants" or "Defendants" for purposes of this motion) **(Doc. 23).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

This lawsuit is about a hunt for buried treasure on Black Mesa, a hill area located northwest of Espanola, New Mexico where it is believed that several large caches of gold treasure and antiquities are hidden, based on centuries-old treasure maps. Plaintiff, who is proceeding *pro se*, claims that he contractually agreed with Defendants to fund the expedition. He alleges that other individuals on the expedition conspired to steal buried gold from Black

Mesa land owned by one of the Cook Defendants and stashed it elsewhere; and that the theft was part of a scheme to prevent Plaintiff from discovering hidden reserves of gold in order to deprive him of his share.

The Cook Defendants contend that Plaintiff's claims are frivolous and implausible, and they take the stance that there has never been any discovery of gold on Black Mesa. Defendants admit that a Cook-owned company, Defendant Generation Next, LLC, owns property on Black Mesa and that Richard Cook allowed a group of individuals—Plaintiff being one of them—to be part of an exploration team hunting for treasure. For some reason, the relationship between Plaintiff and other members of the team degenerated and Plaintiff was eventually barred from the property. When Plaintiff began sending threatening e-mails to the Cook family in September 2013, accusing them of criminal behavior and conspiracy, Defendants responded by seeking and eventually obtaining a state court restraining order limiting Plaintiff's communication with the Cooks, based on their claims that Plaintiff began to act irrationally and that he ambushed 87 year-old Richard Cook at his home in an attempt to gain entry to Black Mesa..

The case is brought to federal court based on diversity jurisdiction and therefore this court is required to apply New Mexico law. *See Armijo v. Ex Cam, Inc*., 843 F.2d 406 (10th Cir. 1988) (In a diversity action, federal courts are required to apply the law of the forum state).

Defendants seek dismissal of all claims because (1) Plaintiff had no contractual relationship with them and (2) these claims are untimely under applicable statutes of limitation.

## I. Parties

The Court provides an introduction to the numerous individuals and entities to enhance the significance of the facts.

- **Plaintiff Gale Roberts:** resident of Wyoming who conducted business in New Mexico, Texas and Florida; alleges that he contractually agreed with Defendants Melancon,

Patterson, Kemler and Talks to fund a gold treasure exploration mission near Espanola, New Mexico, referred to as the "Black Mesa Expedition."

- **Members of the Cook family** (movants):

  - **Richard Cook**: New Mexico businessman and primary principal in charge of the excavation of gold treasure located in the Spanish Vaults on Black Mesa, working from treasure maps he acquired prior to 1990. Appears to own the company Generation Next, LLC ("Gen Next"), a Defendant in this case. He died in 2016.

  - **Katherine Cook Fishman**: Richard Cook's daughter and Personal Representative of his estate; also legal counsel for Richard Cook's company, Defendant Gen Next.

  - **Paul Caster**: husband of Richard Cook's granddaughter and general manager of Gen Next at the time.[1]

- **Entities and Associated Individuals**:

  - **Generation Next, LLC** ("Gen Next"); registered in New Mexico and purportedly owns property on Black Mesa; the company appears to be owned by Richard Cook.

  - **Antiquity Encounter** – Company owned by John Melancon to conduct his business during relevant time.

    - **Expedition Resources, LLC** ("Expedition") and Exploration OPES, LLC ("OPES"); **managing members: Donald Patterson, Jerry Kemler, John Melancon and Howard Talks**.

    - **Patterson and Kemler** claim to have Special Forces Training and years of experience in treasure hunting and the use of geophysical equipment for such purposes.

    - **John Melancon** is an archeologist hired by Richard Cook to help lay claim to the gold and artifacts expected to be found on Black Mesa

    - **Howard Talks**: treasure hunter and past financier of gold finding expeditions for Defendants Patterson and Kemler

- **Others**:

  - **William "Bill" Floto**: allegedly located, and illicitly removed gold and artifacts from private property on Black Mesa in March 2013.

---

[1] A Clerk's entry of default was recently entered against Defendant Caster. Doc. 48.

- Non-party **Radiant Exploration**: satellite technology company that has the ability to remotely survey and detect presence of oil, gas and mineral.

## II. Summary of Facts

The facts asserted in the Amended Complaint (Doc. 3) stretch for thirty pages. The relevant facts can be summed up as follows:[2]

July 22, 2010: Gen Next, owner of the Black Mesa property, entered into a one-year exclusive Recovery Agreement allowing Defendant Expedition Resources the right to access the property for exploration. Doc. 3 at 45. The agreement expired on July 22, 2011 without Expedition Resources ever having entered the property due to a lack of funding. Am. Compl., ¶41.

November 2012: Plaintiff ("Plaintiff" or "Roberts") alleges that Defendants enlisted him to finance and participate in an expedition to search for and recover gold and artifacts from Black Mesa. He entered into a Joint Venture Agreement with Defendant Expedition and its members providing him with a 50/50 split and with Plaintiff Roberts paying all costs. The agreement was brokered by Defendant Melancon allegedly with Richard Cook's approval. Doc. 3, ¶46.

February 2013: Def Gen Next entered into an exclusive one-year recovery agreement with Defendant Melancon's company, Antiquity Encounter ("Antiquity") to search for and recover gold and artifacts from Black Mesa. *See* Doc. 3 at 57 ("Black Mesa Recovery Agreement," referred by Plaintiff as the "New Agreement"). Plaintiff alleges that Defendant Melancon secured this agreement with Defendant Gen Next "on behalf of and in accordance with the Joint Venture Agreement that Plaintiff Roberts had with Defendant Expedition. Doc. 3, ¶25.

---

[2] These facts are from the Amended Complaint, Doc. 3. The Court provides citations to the pleading only where necessary.

March 2013: Using testing equipment Roberts had purchased specifically for the expedition, two gold targets were located. As the targets were located, tension grew between him and Defendants Patterson and Kemler. Although unknown to Plaintiff at the time, Defendants Patterson and Kemler located two other gold targets with the help of Defendant William "Bill" Floto, who was flown up from Florida, using Floto's "proprietary science." Doc. 3, ¶62.

March 6, 2013: in Plaintiff's absence, the Melancon team members—Defendants Patterson, Kemler and Floto—dug up the gold in one of these two targets and secreted it away. They then "unloaded an ATV from the back of the pickup and spun it around in circles over the excavation area on top of the mesa as a means to cover up the hole where they extracted the gold." Doc. 3, ¶¶ 62; 64. These men then hid the Bill Floto's test results and manufactured false results in their place in order to deceive him about these other two locations where gold was hidden.

End of March 2013: Defendants Patterson and Kemler began transporting the gold and artifacts they had secretly removed and took them to Florida. Plaintiff informed the Cook family defendants (Gen Next, Caster and Fishman) by e-mail about the false test results furnished by Defendants Patterson, Kemler and Floto, but then when they did not respond to his e-mails, he realized that these the Cook defendants were also part of the conspiracy to exclude him from a share in the gold that was stolen at the Black Mesa property by Defendants Patterson, Kemler and Floto. Doc. 3, ¶91 (". . . Richard Cook and Defendants Melancon, Caster and Fishman chose to join in a growing conspiracy and remained silent . . . .").

Sept 13, 2013, Plaintiff telephoned Richard Cook and entered into a verbal agreement to allow Plaintiff to finish the excavation of the gold from the Spanish Vaults on Black Mesa.

However, Defendants Caster and Fishman would not allow Roberts to return to the Black Mesa property.  The Cook family obtained a restraining order limiting communication with Plaintiff. Plaintiff alleges that Defendants Fishman, Caster and Gen Next failed to facilitate an in-person meeting with Richard Cook as he requested.  At this time, Plaintiff also discovered names of individuals who may have helped Defendant Patterson launder the gold and artifacts taken from Black Mesa on March 6, 2013.  In response to Plaintiff's inquiries on this subject, Defendant Patterson allegedly left death threats on Plaintiff's phone message machine.

February 2014: agreement with Plaintiff expires, at which point, Defendant Expedition (that is, Defendants Melancon and Patterson) negotiated a secret agreement with Richard Cook and Defendant Caster to use satellite-based technology from Radiant Exploration to further evaluate Black Mesa, excluding Plaintiff from these negotiations.  On inquiry by Plaintiff, Defendant Patterson confirmed to him that was no longer wanted on the expedition because he had generated a "tremendous amount of unwanted attention about Black Mesa." Doc. 3, ¶126.

February 2018: Plaintiff confirmed by use of a Radiant Exploration's satellite technology that 11 of the 12 Spanish Vaults are still undisturbed, but all the gold and artifacts from Chamber 1 have been removed.

Plaintiff asserts that all of the named Defendants caused, participated in and tried to cover up the events that gave rise to the complaint.

## III. Claims Asserted in Complaint

The Amended Complaint contains eleven counts:

1. Intentional Misrepresentation of Material Facts
2. Conversion
3. Conspiracy
4. Breach of Written Contract
5. Breach of Verbal Agreement
6. Fraudulent Inducement

7. Tortious Interference with Contractual Relations
8. Breach of Covenant of Good Faith and Fair Dealing
9. Breach of Implied-In-Fact Contract
10. Promissory Estoppel
11. Quantum Meruit/Unjust Enrichment

## DISCUSSION

The Cook Defendants move to dismiss all claims alleged against them in the Amended Complaint on several grounds: (1) all claims are time-barred by the applicable statutes of limitations; (2) contract claims cannot survive because Plaintiff was not either a party or an intended third party beneficiary to any written contract; and (3) claims arising from the entry of a state court order limiting Plaintiff's contact with the Cook Defendants should be dismissed because Plaintiff never challenged or sought to set aside the order and because all statements made in connection with the order are absolutely immune from civil liability.

Defendants group Plaintiff's claims into two groups: claims arising from the denial of Plaintiff's access to Black Mesa; and claims that arise from the state TRO proceeding against Plaintiff. The Court groups Plaintiff's claims differently, according to their legal description, in order to maximize the application of the legal analysis employed:

(1) Contract-based claims: Counts IV, V, VIII and IX
(2) Tort-based claims: Counts I, II, III, VI, VII
(3) Equity-based claims: Counts X and XI

### I.  Contract-Based Claims

The following claims are contract-based:

Count IV:     Breach of Written Contract
Count V:      Breach of Verbal Agreement
Count VIII:   Breach of Covenant of Good Faith and Fair Dealing; and
Count IX:     Breach of Implied-In-Fact Contract.

There appear to be three contracts that are relevant to this case:

(1) The Piedra, Inc. contract, dated July 22, 2010. This was a contract between Gen Next, owner of the Black Mesa property and Defendant Expedition Resources. The contract was a one-year exclusive Recovery Agreement allowing Defendant Expedition Resources the right to access the property for exploration. Doc. 3 at 45. The agreement expired on July 22, 2011 without Expedition Resources ever having entered the property due to a lack of funding. Am. Compl., ¶41.

(2) the Joint Venture Agreement, dated November 26, 2012: this agreement was between Plaintiff and Defendants Patterson/Expedition Resources. It is captioned as a "Memorandum of Understanding for a Joint Venture Agreement." Doc. 3 at 48. This agreement identifies and refers to Plaintiff throughout as "GW" which is the anacronym for his company "Gone Working." It describes various aspects of the venture, the purpose of which is "to locate, recover inventory, value and sell or distribute to the Joint Venturers the natural and cultural precious metals, gems, or artifacts." Doc. 3 at 49. The signatories to the agreement are Gale Roberts as a "Joint Venturer" and Donald Patterson as Managing Member of Expedition Resources, LLC, and the agreement was signed by both signatories on November 26, 2012. Under the agreement, Plaintiff was required to pay all costs and monthly salaries of $2,000 to Defendants Melancon, Patterson and Kemler. In return, Plaintiff's costs would be reimbursed prior to any distribution of the liquidated assets recovered. Doc. 3 at 52.

(3) the Black Mesa Recovery Agreement, dated February 12, 2013, referred to by Plaintiff as the "New Agreement," *see* Doc. 3, ¶¶44 & 53. This was an exclusive contract between Defendants Gen Next and Melancon/Antiquity Encounter. *See* Doc. 23-1 at 3. Defendants Richard Cook and Fishman signed this agreement as Co-Managers of Gen Next.

The contracts that are most relevant to this lawsuit are The Joint Venture Agreement and the Black Mesa Recovery Agreement, or "New Agreement."

A. Count IV

Plaintiff alleges a breach of written agreement in Count IV, claiming a breach of two separate agreements. First, Plaintiff claims that he was the intended beneficiary of the November 2012 Joint Venture Agreement and that the managing members of Defendant Expedition (Defendants Melancon, Patterson, Kemler and Talks) breached this agreement. Doc. 3, ¶174. Second, he also claims that Defendants Cook, Gen Next, Melancon, Fishman, Caster and Antiquity breached the February 2013 New Agreement when they refused to allow Plaintiff to return to Black Mesa to complete the excavation.

*Joint Venture Agreement:* The Cook Defendants contend that they were not parties to the contract, and therefore Plaintiff cannot sue Defendants on this agreement.[3] Plaintiff maintains that he is a third-party beneficiary of this agreement, but this argument is unnecessary because he is a party to the agreement and may sue on the contract on that basis. The problem is that Plaintiff cannot sue the Cooks, as the only other signatory to the Joint Venture Agreement is Donald Patterson as Managing Member of Expedition Resources. Plaintiff refers to the Cooks' "awareness" of his role as financier for the expedition, *see* Doc. 34 at 5, but this is not a legal basis for standing to sue the Cooks and there are no facts asserting any link between the Cooks and the formation of this agreement.[4]

---

[3] Defendants conflate the two contracts, claiming first that Plaintiff is not a party to the contract (which is inaccurate as to the Joint Venture Agreement) and also that the Cook Defendants are not parties to the New Agreement (which is also inaccurate). *See* Doc. 23 at 10-11. More accurately, the reverse is true: Plaintiff was not a party to the 2013 New Agreement, and the Cook Defendants were not parties to the Joint Venture Agreement.

[4] The Court previously found Plaintiff's claims against Defendant Melancon under the Joint Venture Agreement were timely filed. *See* Doc. 53.

9

*New Agreement:* The only signatories to the 2013 Black Mesa Recovery Agreement are: Defendants Richard Cook and Katharine Fishman as "Co-Managers" of Gen Next, and Defendant Melancon for Antiquity Encounter. Under this agreement, Melancon/Antiquity Encouter is given "the exclusive right to access and perform a non-destructive geophysical survey(s) on Black Mesa." Doc. 3 at 57. Nevertheless, Plaintiff claims that he is a third-party beneficiary to this agreement which gives him the right to sue the Cooks.

It is a general rule of law that one who is not a party to a contract cannot maintain suit upon it. *Fleet Mortg. Corp. v. Schuster*, 112 N.M. 48, 49–53 (1991) (citing *Staley v. New*, 56 N.M. 756 (1952)). A third party may be a beneficiary of such contract, and as a beneficiary may have an enforceable right against a party to a contract. *Id.* Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party. *Id.* The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries. *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 105 N.M. 575, 581, 734 P.2d 1258, 1264. Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary. *Id.*

The agreement provides notice by Melancon of Melancon's team members, including Plaintiff, but this provision does not give Plaintiff the right to sue under the agreement as an intended beneficiary. Doc. 3 at 38 ("Dr. Melancon will be using as his team Howard Talks, Don Patterson, Jerry Kemler, . . . Gale Roberts and Mike Renteria." At most, the inclusion of Plaintiff's name as a team member makes Plaintiff an incidental beneficiary, which is defined as "a person who is neither the promisee of a contract nor the party to whom performance is to be rendered [but who] will derive a benefit from its performance." *See Fleet Mortg.,* 112 N.M. at 50

which affords him no contractual rights under the contract. (incidental beneficiary had no right to recover from to recover from accord and satisfaction). Defendants Gen Next and Melancon were the only intended beneficiaries of the 2013 Black Mesa Recovery Agreement ("New Agreement"). Doc. 3 at 58 ("Division of all valuables and artifacts shall be 50% to Gen Next and 50% to Dr. Melancon, after all items have been properly appraised").

B. Count V

In Count V, Plaintiff states that Gen Next breached a verbal agreement allowing Plaintiff to return to Black Mesa to continue excavation in September 2013. This claim refers to the telephone call made by Plaintiff to 87 year-old Richard Cook to persuade him to allow him to return to the expedition.

Defendants contend that the telephone call was Plaintiff's surreptitious attempt to confront Richard Cook to gain access to Black Mesa property. They move for dismissal of this claim because it is time-barred under New Mexico law. *See* NMSA §37-1-4 (actions based on unwritten contracts must be brought within four years). This federal lawsuit was filed in October 2018, making it untimely by one year with regard to claims based on unwritten agreements or contracts.

Plaintiff claims that the limitations period does not apply here because he previously filed a lawsuit in Wyoming federal district court, making his claims timely under New Mexico's "savings statute":

> If, after the commencement of an action, the plaintiff fails therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

NMSA §37-1-14. Plaintiff offers no discussion concerning why the savings statute applies to his time-barred claims in this lawsuit. At any rate, as a matter of law, the savings statute cannot help

Plaintiff because his claims were already time-barred when he improperly filed his first action in Wyoming federal district court on February 20, 2018. On May 8, 2018, the lawsuit was eventually dismissed based on lack of personal jurisdiction. *See* Docs. 41-1 (copy of Wyoming federal lawsuit) & 41-2 (May 8, 2018 Order granting Defendants' motion to dismiss).

The Court also questions whether Plaintiff would be entitled to benefit from the savings statute. "Negligence in prosecution" refers to a plaintiff's failure to file in the correct forum even when he has knowledge of the facts that would deny him jurisdiction. *Barbeau v. Hoppenrath*, 131 N.M. 124, 127 (Ct. App. 2001) (injured motorists' failure to file action in correct jurisdiction was negligence that precluded application of Savings Statute). Plaintiff states that "he had a reasonable belief that Wyoming had the jurisdictional authority and power to decide the matter because the contracts that were entered into and the communication between the parties largely came from his residence in Wyoming to various states." Doc. 34 at 6. Plaintiff may be pro se and untrained in the law, but it is doubtful that Plaintiff reasonably believed that Wyoming would have personal jurisdiction over Defendants, since none of the Defendants lived in that state and all of the relevant events happened New Mexico. Plaintiff's residence in Wyoming obviously did not have any connection to the dispute, and yet Plaintiff chose to file there.

In dismissing Plaintiff's case, the district court of Wyoming was not favorably impressed by Plaintiff's efforts to file his case there. The court liberally construed Plaintiff's pro se pleadings, but noted that Plaintiff had failed to respond to Defendants' dispositive motions, and deemed that failure as a "confession of the motion." Doc. 41-2 at 6. The court was emphatic in its findings that Plaintiff offered no reasonable arguments or facts showing that Wyoming had personal jurisdiction over Defendants:

> Outside of assuming convenience for the Plaintiff, there is no justification from the complaint to have Defendants' defend the lawsuit in Wyoming. None of the exhibits attached to the complaint provide a basis for keeping the suit in Wyoming. The parties' Search and Recovery Contract states it must be arbitrated under the law of the state of New Mexico . . . Additionally, Plaintiffs Joint Venture Agreement requires the law be applied in accordance with the state of Florida . . . ) Plaintiffs complaint does not allege sufficient facts to show general or specific jurisdiction over Defendants. Plaintiff is domiciled in Wyoming. . . . However, no other Defendants are domiciled here . . . Plaintiff does not allege that any defendant has continuous and systematic contacts with Wyoming. In fact, outside of Plaintiff s home in Wyoming, the state is not mentioned in his complaint.

Doc. 41 at 7-8. This Court finds that the circumstances of Plaintiff's filing of a lawsuit in Wyoming on February 20, 2018 constitute "negligence in prosecution," precluding Plaintiff from resorting to New Mexico's savings statute to save his claims from the applicable limitations period. Therefore, the Court will not apply New Mexico's savings statute even if such application would render Plaintiff's claims timely.

    C.    <u>Count VIII</u>

Count VIII asserts that Defendants violated the implied covenant of good faith and fair dealing. Under New Mexico law, a duty of good faith and fair dealing exists in every contract. *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 124 N.M. 613, 954 P.2d 45, 49 (1997). The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994).

This claim fails because the Cook Defendants were not involved in any contractual negotiations with Plaintiff. As discussed above, Plaintiff was a party to the 2012 Joint Venture Agreement, but the Cooks were not parties; and while the Cooks were parties (as Co-Managers of Next Gen) to the 2013 "New Agreement," Plaintiff was not a party or an intended beneficiary to that agreement.

13

D. Count IX

Plaintiff alleges a breach of implied-in-fact contract in Count IX, referring to his agreement to sign a "No Contact Order" in exchange for a promise by the Cook Defendants in September 2013 that they would facilitate a face-to-face meeting with Richard Cook in order to resolve business matters.

Whether or not the Cooks made any such representation or promise to Plaintiff, the claim fails for several reasons. First, the claim is time-barred by the applicable four-year statute of limitations. *See* NMSA §37-1-4 (actions based on oral contracts and fraud must be brought within four years). This deadline expired even before Plaintiff filed his lawsuit in Wyoming federal court in 2018. Second, to the extent the claim indirectly attacks the propriety of a state court order, Plaintiff should seek review of the order in state court rather than here in federal court. it is more appropriately raised in the court that entered the order rather than seeking review here in federal court. *See* Docs. 23-1 & 23-2 (Application for restraining order and order).

Third, any statements made by the Cook Defendants (either themselves or through their attorney) in the course of the TRO proceedings would be subject to immunity and therefore could not be challenged. *See Helena Chem. Co. v. Uribe*, 281 P.3d at 240 (pre-litigation and post-filing statements are subject to absolute immunity and that absolute privilege applies equally to the parties as it does to the party's counsel).

**II. Tort-Based Claims**

Counts I, II, III, VI, VII are tort-based.

A. Count I

In his claim for intentional misrepresentation of material facts, Plaintiff states that in March 2013, Defendants Patterson and Kemler furnished test results about the location of gold

that were intended to intentionally misrepresent the authentic data that was collected in the field (Doc. 3, ¶148) and on February 21, 2014, Defendants' Attorney sent Plaintiff a letter telling Plaintiff that the agreement between Gen Next and Melancon had expired because the expedition "ended poorly for all concerned" and that Gen Next had no intention of further pursuing exploration on Black Mesa (Doc. 3, ¶150). Plaintiff contends that Defendants were fully aware that these representations were false.

The only allegations of intentional misrepresentations involving the Cook Defendants concern the February 21, 2014 letter. Count I is therefore time-barred because actions for relief on grounds of fraud must be brought within four years. NMSA ¶37-1-4.[5] Since the Wyoming case was filed on February 20, 2018 and the alleged misrepresentations occurred on February 21, 2014, it appears as though New Mexico's savings statute would "save" this particular claim by one day. However, the Court has determined that Plaintiff cannot avail himself of the relief afforded by the savings statute. *See* discussion above under Count V, breach of verbal agreement.

B. Count II

In his claim for conversion in Count II, Plaintiff alleges that Defendants knowingly interfered with Plaintiff's rights to the gold and artifacts that remain on Black Mesa. Plaintiff contends that the Cook Defendants were initially misled by Melancon's exploration team (with Kemler and Floto), but that they later became part of a grand conspiracy among all Defendants to keep Plaintiff from collecting his share of the treasure.

Defendants argue that these allegations of stolen gold are implausible and incredible and indeed, one may bring a certain amount of healthy skepticism to tales of hidden pirates' loot—

---

[5] It would appear that, under New Mexico's savings statute, this claim is timely by one day, since the Wyoming case was filed on February 20, 2014 and the alleged misrepresentations occurred on February 21, 2018. This is the only one of Plaintiff's claims that theoretically would be "saved" under the statute, but

except that Defendants apparently shared Plaintiff's hopes of finding buried treasure. As early as July 2010, Defendants Cook and Expedition Resources pooled their resources to locate "valuables or artifacts such as gold, silver and cultural period items" that were located on or near Black Mesa. Doc. 3 at 45 (Piedra, Inc. Agreement). In addition, under the February 2013 Black Mesa Recovery Agreement, Defendants Cook, Fisherman and Melancon all sought to uncover "metals/minerals or treasure." Doc. 3 at 57. Such evidence does not allow Defendants to assume the role of skeptics.

Ultimately, Plaintiff's conversion claim is not defeated by disbelief, but by a four-year limitations period. *See* NMSA §37-1-4 ("those [actions] brought for . . . conversion of personal property . . . within four years."). Because the events related to conversion occurred prior to September 2013, Plaintiff would have had to file suit alleging conversion by September 2017 to be timely. The Wyoming lawsuit was filed on February 20, 2018, and so even the New Mexico savings statute could not rescue these claims.

C. Count III

Count III asserts that in April 2013, Defendants willfully conspired to cover up any illegal activity on the Black Mesa site, Doc. 3, ¶162, and that Defendants Patterson, Kemler, Melancon and Talks conspired to dishonor all contractual obligations. Plaintiff alleges that the Cook Defendants shared in the conspiracy to cover up the illegal activity conducted by the other Defendants in removing gold from Black Mesa. ¶165.

The conspiracy claim can be summarily dismissed because it is not actionable in itself. Unlike a conspiracy in the criminal context, a civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own. <u>Ettenson v. Burke</u>, 130 NM 67, 72 (2000); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1205

16

(10th Cir. 2001) (citing *Reeves v. Wimberly,* 107 N.M. 231, 235 (N.M.Ct.App.1988) (the gist of a conspiracy action "is the damage arising from the act(s) done pursuant to the conspiracy").

Count III must also be dismissed because it is time-barred. Based on Plaintiff's allegations, he knew about the alleged false results in March 2013 when he discovered them in Kemler's notebook. Doc. 3, ¶¶63 & 75. Whether the conspiracy claim is brought as a fraud or tort claim, it is brought too late. Claims grounded in fraud must be brought within four years of the date when Plaintiff knew or should have known of the fraudulent statement. N.M.S.A. § 37-1-4 ("those brought . . . for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years."). Under the statute of limitations for torts, the conspiracy claim would be even more untimely, as that limitations period is three years. N.M.S.A. § 37-1-8. Thus, Plaintiff's claim was time-barred, even before he filed the federal lawsuit in Wyoming.

### D. Count VI

Plaintiff alleges a fraudulent inducement claim in Count VI. Plaintiff states that in September 2013, the Cook Defendants deceived him and induced him to sign a Court Order limiting his communications with Richard Cook by agreeing to facilitate a face-to-face meeting. This claim will be dismissed because (1) it is an improper collateral attack on a state court order, and should have been appealed in state court; and (2) is time barred under New Mexico's four-year limitations period for claims based on fraud. *See* NMSA §37-1-4.

### E. Count VII

Count VII asserts a claim for tortious interference with contractual relations, Plaintiff alleges that in September 2013, Defendants Fisher and Caster interfered with the verbal agreement between Richard Cook and himself to allow him to return to Black Mesa to excavate

the gold and artifacts located there. This claim is also untimely because it should have been filed by September 2017.

## III. Equity-Based claims

The remaining claims in the Amended Complaint, Counts X and XI, are equity-based. Count X is a promissory estoppel claim, wherein Plaintiff relied on misrepresentations made by Defendants Cook, Patterson, Kemler, Gen Next, Fishman, Caster, Antiquity and Melancon and in doing so, lost his investment. In Count XI, Plaintiff claims that the Cook Defendants, *inter alia,* were unjustly enriched. He invested over $120,000 in cash, his personal time and his knowledge during the Black Mesa expedition. Plaintiff claims he provided the ability to operate scientific equipment used on the site that directly resulted in the discovery of the Spanish Vaults, and this conferred substantial benefit on Defendants.

Counts X and XI are time-barred: both of these claims are premised on Plaintiff's alleged denial of access to Black Mesa. These events occurred on or before September 2013, which makes them untimely if considered as tort claims (NMSA §37-1-8 for tort claims) or as quasi-contract claims (NMSA §37-1-4 for unwritten contracts and other actions not otherwise specified).

Both of these claims must also be dismissed because Plaintiff's equitable claims cannot proceed where the contract and tort claims have been time-barred. *See Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 675 (10th Cir. 2016) (where primary claims are barred by a legal statute of limitations, the exercise of equity jurisdiction to determine the underlying facts would also be barred).

## CONCLUSION

In sum, this Court finds and concludes that Plaintiff's claims against the Cook Defendants are dismissed either because they are time-barred or because the Cooks were not parties to any contract or agreement involving Plaintiff.

The Court further finds and concludes that New Mexico's savings statute, NMSA §37-1-14, does not apply to most of Plaintiff's claims, which were filed in Wyoming federal court after the statute of limitations expired. Moreover, the Court finds and concludes that the circumstances of Plaintiff's filing of a lawsuit in Wyoming on February 20, 2018 constitute "negligence in prosecution" and therefore Plaintiff cannot rely on the savings statute to avoid dismissal under the applicable statutes of limitations.

The Court's rulings herein effectively dismiss all of Plaintiff's claims against the Cook Defendants—namely, Defendants Generation Next, LLC; the estate of Richard Cook; and Katherine Cook.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss filed by Defendants Generation Next, LLC, the estate of Richard Cook and Katharine Cook, **(Doc. 23)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE