# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GALE ROBERTS,

    Plaintiff,

v.                                                                          No. 18-cv-00975-WJ-LF

GENERATION NEXT, LLC, RICHARD COOK,
Estate of, KATHARINE COOK FISHMAN, PAUL
MATTHEW CASTER, ANTIQUITY ENCOUNTER,
JOHN MELANCON, EXPEDITION RESOURCES, LLC,
EXPLORATION OPES, LLC, DONALD PATTERSON,
GERALD KEMLAR, HOWARD TALKS, WILLIAM FLOTO,
JOHN AND JANE DOES,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT TALK'S MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant Talks' Motion to Dismiss, filed March 1, 2019 **(Doc. 49)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is granted.

## BACKGROUND

This lawsuit is about a hunt for buried treasure. Plaintiff, d/b/a "Gone Working," is proceeding *pro se* in this lawsuit. He is a resident of Wyoming who conducted business in New Mexico, Texas and Florida, and claims that he contractually agreed with Defendants Melancon, Patterson, Kemler and Talks, to fund a gold treasure exploration mission near Espanola, New Mexico, known as the "Black Mesa Expedition." Black Mesa is a hill area located northwest of Espanola, New Mexico where it is believed that several large caches of gold treasure and antiquities are hidden in Spanish Vaults.

Defendant Talks ("Talks" or "Defendant" for purposes of this opinion) is described in the complaint as a treasure hunter and past financier of gold finding expeditions for Defendants Patterson and Kemler. Talks, along with Defendants Melancon, Patterson Kemler, was a managing member of Expedition Resources, LLC and Exploration OPES, LLC ("OPCS"), both of which are companies involved in the expedition.

Plaintiff claims that Talks allegedly caused, participated in and tried to cover up the illegal taking of gold from the expedition site and that in doing so, they conspired to deprive him of his contractual rights as a member of the expedition. Plaintiff asserts six of the eleven counts in the complaint against Talks:

> Count II – Conversion;
> Count III – Conspiracy;
> Count IV – Breach of Written Contract;
> Count VI – Fraudulent Inducement;
> Count VIII – Breach of the Covenant of Good Faith and Fair Dealing; and
> Count 11 – Quantum Meruit/Unjust Enrichment

Defendant contends that the claims against him asserted by Plaintiff are either time-barred or that they fail to state a claim as a matter of law. The case is brought to federal court based on diversity jurisdiction and therefore this court is required to apply New Mexico law. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406 (10th Cir. 1988) (In a diversity action, federal courts are required to apply the law of the forum state).

I. **Relevant Facts**[1]

The following are the bare relevant facts as alleged in the complaint, arranged chronologically:

November 2012: According to the complaint, Plaintiff entered into a Joint Venture Agreement in November 2012 with Defendants Patterson/Expedition Resources, which was

---

[1] The complaint contains thirty-pages of facts. A more detailed factual description is included in the Court's Memorandum Opinion and Order granting Defendant Cook's Motion to Dismiss. *See* Doc. 54 at 2-6.

captioned as a "Memorandum of Understanding for a Joint Venture Agreement." Doc. 3 at 48 (also referred to as the "New Agreement" by Plaintiff, *see* Doc. 3, ¶¶44, 53). Under its terms, Plaintiff was to pay all costs and would be entitled to a 50/50 split in discovered uncovered gold and artifacts. The agreement was brokered by Defendant Melancon with the approval of Richard Cook, who owned the treasure maps used in the expedition and whose company, Generation Next, LLC ("Gen Next") owned property on Black Mesa. Doc. 3, ¶46.[2]

March 2013: Using testing equipment Roberts had purchased specifically for the expedition, two gold targets were located. As the targets were located, tension grew between him and Defendants Patterson and Kemler. Although unknown to Plaintiff at the time, Defendants Patterson and Kemler located two other gold targets with the help of Defendant William "Bill" Floto, who was flown up from Florida, using Floto's "proprietary science." Doc. 3, ¶62.

March 6, 2013: in Plaintiff's absence, the Melancon team members—Defendants Patterson, Kemler and Floto—dug up the gold in one of these two targets and secreted it away. These men then hid the Bill Floto's test results and manufactured false results in their place in order to deceive Plaintiff about these other two locations where gold was hidden.

March 15, 2013: Plaintiff met Richard Cook for the first time, during which time Cook related the story about treasure hidden by robbers that held up a pack train of mules hauling gold and silver coins in the late 1800's ("OJO Robbery"). Doc. 3, ¶73.

March 16, 2013: with the permission of Richard Cook and Defendant Caster, the excavation to locate the Spanish Vaults on Black Mesa began. Doc. 3, ¶74. The team was several days into the excavation when Plaintiff Roberts discovered that Defendant Kemler had tried to hide the test results from March 6, 2013 in his personal notebook. *Id.,* ¶74.

Mid-March 2013: Defendants Patterson and Kemler informed Plaintiff that they needed to return to Florida. Plaintiff intended to use the time they were away to report his concerns regarding suspicious activity at the expedition site to Cook and Melancon. Doc. 3, ¶78.

March 24, 2013: Defendants Patterson and Kemler began transporting the gold and artifacts they had secretly removed and took them to Florida. Doc. 3, ¶82.

May 1 - Sept 13th 2013: Plaintiff pleaded with Defendants Melancon, Fishman and Caster to meet with him and resolve everything, but Defendants remained silent and waited for the agreements to expire. Doc. 3, ¶ 99.

---

[2] Richard Cook died in 2016. His daughter, Katherine Fishman, is the personal representative of Mr. Cook's estate and was also legal counsel for the company Generation Next, LLC.

<u>Mid- to late September 2013</u>:  Plaintiff and Richard Cook entered into a verbal agreement to allow Plaintiff to finish the excavation of the gold from the Spanish Vaults on Black Mesa. However, Defendants Caster and Fishman would not allow Roberts to return to the Black Mesa property.  Fishman filed for restraining order against Plaintiff which limited direct communication between Plaintiff and the Cook family.[3]  Doc. 3, ¶¶101, 106-115.

<u>Feb 21, 2014</u>: Gen Next sent Plaintiff e-mail claiming that all contracts had expired; that Black Mesa Expedition had ended poorly for all involved; and that they had no intention of any further expedition of Black Mesa.  However, Plaintiff was aware that two weeks later, Defendants Patterson, Kemler and Floto had located and removed gold from Black Mesa on March 6, 2013. Plaintiff also discovered that about two weeks later, Defendant Gen Next, Fishman and Caster renewed efforts to recover gold and artifacts from Chamber #1 of the Spanish Vaults at Black Mesa.  Doc. 3, ¶¶130, 132.

## II.     Legal Standard

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).  In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or

---

[3] Plaintiff began sending threatening e-mails to the Cook family in September 2013, accusing them of criminal behavior and conspiracy. Members of the Cook family responded by seeking and eventually obtained a state court restraining order that limited Plaintiff's communication with the Cooks, based on their claims that Plaintiff began to act irrationally and that he ambushed 87 year-old Richard Cook at his home in an attempt to gain entry to Black Mesa. *See* Doc. 54 at 14; Docs. 23-1 & 23-2 (Application for restraining order and state court order).

4

"formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1215-16 (D.N.M. 2010) *aff'd*, 499 F. App'x 771 (10th Cir. 2012); (*Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. Appx. 463 (10th Cir. 2009) (dismissal is proper when it is clear from the face of the complaint that the claims are time barred).

## DISCUSSION

Defendant contends that all of these claims are time-barred. Plaintiff claims they are not time-barred on two grounds. First, he relies on the federal discovery rule, claiming that he did not discover the "alleged events" until after the limitations period expired. *See Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 257 (1992) (cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause). Second, Plaintiff claims that the limitations period does not apply in this case because he previously filed a lawsuit in Wyoming federal district court on February 20, 2018, making his claims timely under New Mexico's "savings statute":

> If, after the commencement of an action, the plaintiff fails therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

NMSA §37-1-14.

Plaintiff cannot rely on either of these arguments to toll the limitations period. Plaintiff's "delayed discovery" argument is contradicted by his own allegations in the complaint. Based on those allegations, which the Court views as true, *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d

5

1210, 1214 (10th Cir. 2011), Plaintiff knew about the alleged false results in March 2013 when he discovered them in Kemler's notebook. Doc. 3, ¶¶63 & 75.  Thus, Plaintiff was aware of the basis for the allegations in mid-March. *See also* Doc. 54 at 17 (previously rejecting Plaintiff's "delayed discovery" argument).

As for Plaintiff's other argument, the Court has already determined that the circumstances of Plaintiff's filing of the Wyoming lawsuit constitute "negligence in prosecution" which bars him from relying on the savings statute to save his claims—even if those claims would be rendered timely under the statute.  Plaintiff previously raised this argument in responding to Defendant Cook's motion to dismiss, and the Court's full analysis is contained in that decision granting Defendant's motion.  *See* Doc. 54 at 11-13.

With no further meritorious arguments left to support Plaintiff's tolling theories, what remains is an examination of the claims to determine whether they are indeed time-barred.  The Court would also add here that Plaintiff's response adds absolutely nothing to the analysis.  It is rife with immaterial factual "clarifications" (for example, that he is not fabricating stories about Spanish Vaults or treasure maps, *see* Doc. 51 at 13) and irrelevant law (for example, reciting criminal conspiracy statutes that do not require proof of overt act, *see* Doc. 51 at 7).

Of the six claims asserted against Defendant, only one claim, breach of contract in Count IV, is a pure contract claim.  The Court will first address Counts II, III, VI and VIII, which are either tort claims or quasi-contract claims, then address the contract claim in Count IV, and finally the equity-based claims in Count XI.

A.   Count II: Conversion

In his claim for conversion in Count II, Plaintiff alleges that Defendants, including Talks, knowingly interfered with Plaintiff's rights to the gold and artifacts that remain on Black Mesa.

Plaintiff had four years in which to bring a claim against Defendant for conversion. *See* NMSA §37-1-4 (four year limitations period for actions "brought for . . . conversion of personal property"). Because the events related to conversion occurred prior to September 2013, Plaintiff would have had to file suit alleging conversion by September 2017 to be timely. Plaintiff filed this federal lawsuit on October 19, 2018, which makes this claim untimely by more than a year. Moreover, this claim was already time-barred when he filed his Wyoming lawsuit on February 20, 2018.[4]

Moreover, there are no facts alleged in the complaint plausibly connecting Talks to this claim, nor is there any allegation that Talks received any stolen gold or was part of the team that located, excavated and moved the gold surreptitiously. Therefore, this claims shall be dismissed both because it is time-barred and because it fails to state a claim against Talks under Fed.R.Civ.P. 12(b)(6).

B. Count III: Conspiracy

Count III alleges that in April 2013, Defendants Patterson, Kemler, Melancon and Talks willfully conspired to cover up any illegal activity on the Black Mesa site and in doing so, conspired to dishonor all contractual obligations. Doc. 3, ¶162. This claim can be summarily dismissed because it is not actionable as a separate claim. Unlike a conspiracy in the criminal context (which is irrelevant in this civil action), a civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own. *Ettenson v. Burke*, 130 NM 67, 72 (2000); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1205 (10th Cir. 2001) (*citing Reeves v. Wimberly*, 107 N.M. 231, 235 (N.M.Ct.App.1988) (the gist of a

---

[4] On May 8, 2018, the Wyoming lawsuit was eventually dismissed based on lack of personal jurisdiction. *See* Docs. 41-1 (copy of Wyoming federal lawsuit) & 41-2 (May 8, 2018 Order granting Defendants' motion to dismiss); *see also* Doc. 54 at 12.

conspiracy action "is the damage arising from the act(s) done pursuant to the conspiracy"). A stand-alone conspiracy claim must be dismissed and "the civil conspiracy allegations must be separately pled as to each of the substantive causes of action." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007), *citing Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F.Supp.2d 941, 947-48 (N.D. Cal. 2003).

This claim must also be dismissed because it is time-barred. The facts alleged in the complaint state that the "conspiracy" to cover up Defendant's secret gold expedition occurred in March 2013, when Plaintiff discovered false location results in Kemler's notebook. Doc. 3, ¶¶63, 75. Whether this conspiracy claim is brought as a fraud or tort claim, it is brought too late. Claims grounded in fraud must be brought within four years of the date when Plaintiff knew or should have known of the fraudulent statement. N.M.S.A. § 37-1-4 ("those brought . . . for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years."). Under the statute of limitations for torts, the conspiracy claim would be even more untimely, as that limitations period is three years. N.M.S.A. § 37-1-8. Thus, Plaintiff's claim was time-barred, even before Plaintiff filed the federal lawsuit in Wyoming.

Also, as with Plaintiff's claim for conversion, the complaint lacks specific allegations concerning Defendant in any theft of cover-up, except for his role as a managing member in the company that was a party to the Joint Venture Agreement. Therefore, this claim fails as a matter of law because it does not state a claim against Talks.

C.  Count VI: Fraudulent Inducement

In Count VI, Plaintiff asserts that certain Defendants, including Talks, presented him with a "solicitation document" seeking funding for the expedition that was "embedded with intentionally misleading statements regarding their credentials." Doc. 3, ¶191. However, as with

the conspiracy claim, there are no facts in the complaint suggesting that Defendant took part in any of the alleged conspiratorial activities or induced Plaintiff to take any action. Plaintiff does not describe what these misleading statements might be, and whether Plaintiff relied on them. Other than Talks' role as a managing member of Expedition, LLC, the factual allegations against him do not support a plausible claim of fraudulent inducement.

In addition, the claim is time-barred, as the events described in Count VI occurred between November 2012 and October 2013 and the limitations period for these claims ended at latest October 2017, a year prior to the filing of this lawsuit. *See* NMSA §37-1-4 (four-year limitations period), The claim would also be time-barred even if the New Mexico savings statute applied, since the Wyoming lawsuit was filed in February 2018.

        D.        <u>Count VIII: Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiff claims that Defendants have violated the implied covenant of good faith and fair dealing. Under New Mexico law, a duty of good faith and fair dealing exists in every contract. *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 124 N.M. 613, 954 P.2d 45, 49 (1997). The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994).

The Court assumes that Plaintiff is implicating Talks based on his role as a managing member of Expedition, which was a party to the Joint Venture Agreement. Even so, this claim is time-barred. All allegations in this claim arise from Plaintiff's purported claim that he was promised access to explore Black Mesa, but then was refused access in September 2013. Under New Mexico law, a party claiming a breach of duty must bring the tort claim within three years. N.M.S.A. § 37-1-8. The statute of limitation for quasi-contract claims is four years. N.M.S.A. §

37-1-4. Based on his own timeline described in the complaint, Plaintiffs claims are untimely, and so this claim will be dismissed.

      E.      <u>Count IV: Breach of Written Contract</u>

Plaintiff alleges a breach of written agreement in Count IV in which he claims that Defendants Melancon, Patterson, Kemler and talks entered into a written contract, the Joint Venture Agreement.

The Joint Venture Agreement identifies and refers to Plaintiff throughout as "GW" which is the acronym for his company "Gone Working." It describes various aspects of the venture, the purpose of which is "to locate, recover inventory, value and sell or distribute to the Joint Venturers the natural and cultural precious metals, gems, or artifacts." Doc. 3 at 49. The signatories to the agreement are Gale Roberts as a "Joint Venturer" and Donald Patterson as Managing Member of Expedition Resources, LLC. The agreement was signed by both signatories on November 26, 2012. Under the agreement, Plaintiff was required to pay all costs and monthly salaries of $2,000 to Defendants Melancon, Patterson and Kemler. In return, Plaintiff's costs would be reimbursed prior to any distribution of the liquidated assets recovered. Doc. 3 at 52.

Under New Mexico law, actions based on written contracts must be brought within six years. NMSA §37-1-3. While Talks was a managing member of Expedition, he was not a signatory to the agreement or otherwise mentioned in the agreement. However, Even assuming that Talks can be considered a party to the Joint Venture Agreement, Count IV must still be dismissed. Plaintiff describes the "breach" in this claim as occurring when "the managing members of Defendant Expedition" intentionally misrepresented the test results that they obtained while searching for gold and artifacts and by removing gold and artifacts from the site without "providing any consideration" to Plaintiff. Doc. 3, ¶¶174, 175. However, Talks is not mentioned in the

complaint as one of the individuals who *either* misrepresented the test results or was even at the site at all. *See* Doc. 3, ¶¶62-78 (describing actions of Defendants Patterson and Kemler). Under N.M.S.A.1978, § 53–19–14, a member of a limited liability company is not a proper party to a proceeding against the limited liability company solely by reason of being a member of the company. Thus, Plaintiff fails to assert a plausible claim against Talks for breach of contract. *See Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1217 (D.N.M. 2011) (claims against owners of limited liability company failed where allegations did not specifically allege conduct and therefore owners were not proper parties to suit).

      F.      <u>Count XI: Quantum Meruit/Unjust Enrichment</u>

Plaintiff asserts that Defendants, including Talks, were unjustly enriched. Plaintiff claims that he invested over $120,000 in cash as well as his personal time and his knowledge during the Black Mesa expedition. He alleges that he provided the ability to operate scientific equipment used on the site that directly resulted in the discovery of the Spanish Vaults, and that this conferred substantial benefit on Defendants.

These equity-based claims in Count XI must be dismissed for several reasons. First, it is time-barred. The claim is premised on Plaintiff's alleged denial of access to Black Mesa. These events occurred on or before September 2013, which makes them untimely if considered either as tort claims (NMSA §37-1-8 for tort claims) or as quasi-contract claims (NMSA §37-1-4 for unwritten contracts and other actions not otherwise specified). Second, Count XI must be dismissed because Plaintiff's equitable claims cannot proceed where the contract and tort claims have been time-barred. *See Sierra Club v. Oklahoma Gas & Elec. Co*., 816 F.3d 666, 675 (10th Cir. 2016) (where primary claims are barred by a legal statute of limitations, the exercise of equity jurisdiction to determine the underlying facts would also be barred).

11

## CONCLUSION

In sum, this Court finds and concludes that Plaintiff's claims against Talks are dismissed because they are time-barred and/or because they fail to state a plausible claims under Rule 12(b)(6). The Court finds, as it did previously, that the circumstances of Plaintiff's filing of his federal lawsuit in Wyoming constitute "negligence in prosecution" and therefore Plaintiff cannot rely on New Mexico's savings statute, NMSA §37-1-14, to avoid dismissal under the applicable statutes of limitations. The Court also finds that these claims would be untimely even if the savings statute applied.

**THEREFORE,**

**IT IS ORDERED** that Defendant Talk's Motion to Dismiss **(Doc. 49)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE