# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GALE ROBERTS,

      Plaintiff,

      v.                                                      No. 18-cv-00975-WJ-LF

GENERATION NEXT, LLC, RICHARD COOK,
Estate of, KATHARINE COOK FISHMAN, PAUL
MATTHEW CASTER, ANTIQUITY ENCOUNTER,
JOHN MELANCON, EXPEDITION RESOURCES, LLC,
EXPLORATION OPES, LLC, DONALD PATTERSON,
GERALD KEMLAR, HOWARD TALKS, WILLIAM FLOTO,
JOHN AND JANE DOES,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## EXPEDITION DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Expedition Defendants' Motion to Dismiss, filed January 28, 2019 **(Doc. 37)**. Having reviewed the parties' pleadings and the applicable law, the Court grants and denies Expedition Defendants' motion to dismiss as follows:

    (1) GRANTED with regard to Counts 5 and 9;

    (2) GRANTED as to Counts 1, 2, 3, 6 and 7; and

    (3) DENIED as to Counts 4, 8, 10 and 11, for reasons described below.

## BACKGROUND

This lawsuit is about a hunt for buried treasure on Black Mesa, a hill area located northwest of Espanola, New Mexico where some believe that several large caches of gold treasure and antiquities are hidden. Plaintiff is a resident of Wyoming who conducted business in New Mexico, Texas and Florida, and claims that he contractually agreed with Defendants Melancon, Patterson,

Kemler and Talks, to fund a gold treasure exploration mission near Espanola, New Mexico, known as the "Black Mesa Expedition." Black Mesa is a hill area located northwest of Espanola, New Mexico where some believe that several large caches of gold treasure and antiquities are hidden in Spanish Vaults.

Plaintiff, who is proceeding pro se, claims that he contractually agreed with Defendants to fund the expedition. He alleges that other individuals on the expedition conspired against him to steal buried gold from Black Mesa land owned by one of the Cook Defendants and stashed it elsewhere; and that the theft was part of a scheme to prevent Plaintiff from discovering hidden reserves of gold in order to deprive him of his share.

The individual movants in this motion, Donald Patterson, Gerald Lee Kemler and William Floto, are proceeding *pro se.* The other two movant-companies, Expedition Resources, LLC ("Expedition Resources") and Expedition OPES ("OPES") were involved in the expedition. Defendant Patterson and Kemler were two of the managing members of these companies.[1]

## I. Relevant Facts

The following are the bare relevant facts as alleged in the complaint, arranged chronologically:

November 2012: According to the complaint, Plaintiff entered into a Joint Venture Agreement in November 2012 with Defendants Patterson/Expedition Resources, which was captioned as a "Memorandum of Understanding for a Joint Venture Agreement." Doc. 3 at 48 (also referred to as the "New Agreement" by Plaintiff, *see* Doc. 3, ¶¶44, 53). Under its terms, Plaintiff was to pay all costs and would be entitled to a 50/50 split in discovered uncovered gold and artifacts. The agreement was brokered by Defendant Melancon with the approval of Richard

---

[1] Defendants Melancon and Talks were also managing members, but have filed separate motions to dismiss. *See* Doc. 53 (denying Defendant Melancon's motion to dismiss based on statute of limitations) and Doc. 58 (granting Defendant Talk's motion to dismiss based on timeliness and failure to state a claim on which relief can be granted).

Cook, who owned the treasure maps used in the expedition and whose company, Generation Next, LLC ("Gen Next") owned property on Black Mesa. Doc. 3, ¶46.[2]

March 2013: Using testing equipment Roberts had purchased specifically for the expedition, two gold targets were located. As the targets were located, tension grew between him and Defendants Patterson and Kemler. Although unknown to Plaintiff at the time, Defendants Patterson and Kemler located two other gold targets with the help of Defendant William "Bill" Floto, who was flown up from Florida, using Floto's "proprietary science." Doc. 3, ¶62.

March 6, 2013: in Plaintiff's absence, the Melancon team members—Defendants Patterson, Kemler and Floto—dug up the gold in one of these two targets and secreted it away. These men then hid the Bill Floto's test results and manufactured false results in their place in order to deceive Plaintiff about these other two locations where gold was hidden.

March 15, 2013: Plaintiff met Richard Cook for the first time, during which time Cook related the story about treasure hidden by robbers that held up a pack train of mules hauling gold and silver coins in the late 1800's ("OJO Robbery"). Doc. 3, ¶73.

March 16, 2013: with the permission of Richard Cook and Defendant Caster, the excavation to locate the Spanish Vaults on Black Mesa began. Doc. 3, ¶74. The team was several days into the excavation when Plaintiff Roberts discovered that Defendant Kemler had tried to hide the test results from March 6, 2013 in his personal notebook. *Id.,* ¶74.

Mid-March 2013: Defendants Patterson and Kemler informed Plaintiff that they needed to return to Florida. Plaintiff intended to use the time they were away to report his concerns regarding suspicious activity at the expedition site to Cook and Melancon. Doc. 3, ¶78.

March 24, 2013: Defendants Patterson and Kemler began transporting the gold and artifacts they had secretly removed and took them to Florida. Doc. 3, ¶82.

May 1 - Sept 13th 2013: Plaintiff pleaded with Defendants Melancon, Fishman and Caster to meet with him and resolve everything, but Defendants remained silent and waited for the agreements to expire. Doc. 3, ¶ 99.

Mid- to late September 2013: Plaintiff and Richard Cook entered into a verbal agreement to allow Plaintiff to finish the excavation of the gold from the Spanish Vaults on Black Mesa. However, Defendants Caster and Fishman would not allow Roberts to return to the Black Mesa

---

[2] Richard Cook died in 2016. His daughter, Katherine Fishman, is the personal representative of Mr. Cook's estate and was also legal counsel for the company Generation Next, LLC.

property. Fishman filed for restraining order against Plaintiff which limited direct communication between Plaintiff and the Cook family.[3] Doc. 3, ¶¶101, 106-115.

<u>Feb 21, 2014</u>: Gen Next sent Plaintiff e-mail claiming that all contracts had expired; that Black Mesa Expedition had ended poorly for all involved; and that they had no intention of any further expedition of Black Mesa. However, Plaintiff was aware that two weeks later, Defendants Patterson, Kemler and Floto had located and removed gold from Black Mesa on March 6, 2013. Plaintiff also discovered that about two weeks later, Defendant Gen Next, Fishman and Caster renewed efforts to recover gold and artifacts from Chamber #1 of the Spanish Vaults at Black Mesa. Doc. 3, ¶¶130, 132.

The complaint refers to three agreements or contracts that were relevant to the expedition. The first was a contract between Gen Next and Defendant Expedition Resources, executed in July 2010. This was a one-year exclusive Recovery Agreement allowing Defendant Expedition Resources the right to access the property for exploration. Doc. 3 at 45. The agreement expired on July 22, 2011 without Expedition Resources ever having entered the property due to a lack of funding. Am. Compl., ¶41.

The second agreement is the 2012 Joint Venture Agreement, which is most relevant to the issues raised in this motion. This agreement was between Plaintiff and Defendants Patterson/Expedition Resources. It is captioned as a "Memorandum of Understanding for a Joint Venture Agreement." Doc. 3 at 48. This agreement identifies and refers to Plaintiff throughout as "GW" which is the anacronym for his company "Gone Working." Under the Joint Venture Agreement, the purpose of the expedition was "to locate, recover inventory, value and sell or distribute to the Joint Venturers the natural and cultural precious metals, gems, or artifacts." Doc. 3 at 49. The signatories to the agreement are Gale Roberts as a "Joint Venturer" and Donald

---

[3] Plaintiff began sending threatening e-mails to the Cook family in September 2013, accusing them of criminal behavior and conspiracy. Members of the Cook family responded by seeking and eventually obtained a state court restraining order that limited Plaintiff's communication with the Cooks, based on their claims that Plaintiff began to act irrationally and that he ambushed 87 year-old Richard Cook at his home in an attempt to gain entry to Black Mesa. *See* Doc. 54 at 14; Docs. 23-1 & 23-2 (Application for restraining order and state court order).

Patterson as Managing Member of Expedition Resources, LLC, and the agreement was signed by both signatories on November 26, 2012. Under the agreement, Plaintiff was required to pay all costs and monthly salaries of $2,000 to Defendants Melancon, Patterson and Kemler. In return, Plaintiff would receive a share of the value of whatever treasure was recovered, and his costs would be reimbursed prior to any distribution of the liquidated assets recovered as well. Doc. 3 at 52.

The third agreement is the Black Mesa Recovery Agreement, dated February 12, 2013 (referred to by Plaintiff as the "New Agreement," *see* Doc. 3, ¶¶44 & 53). This was an exclusive contract between Defendants Gen Next and Melancon/Antiquity Encounter. *See* Doc. 23-1 at 3. Defendants Richard Cook and Fishman signed this agreement as Co-Managers of Gen Next.

## II. Legal Standard

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or

"formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1215-16 (D.N.M. 2010) *aff'd*, 499 F. App'x 771 (10th Cir. 2012); (*Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. Appx. 463 (10th Cir. 2009) (dismissal is proper when it is clear from the face of the complaint that the claims are time barred).

Plaintiff asserts the following claims against these Defendants ("Defendants" hereinafter):

1. Intentional Misrepresentation of Material Facts
2. Conversion
3. Conspiracy
4. Breach of Written Contract
6. Fraudulent Inducement
7. Tortious Interference with Contractual Relations
8. Breach of Covenant of Good Faith and Fair Dealing
10. Promissory Estoppel
11. Quantum Meruit/Unjust Enrichment

The Court agrees with Defendants that Counts 5 (breach of verbal agreement) and 9 (breach of implied-in-fact contract) are not sufficiently alleged against these Defendants; the allegations in these counts are directed toward other Defendants, and thus Counts 5 and 9 are dismissed against Defendants under Rule 12(b)(6).[4] These two claims will therefore not be addressed further.

---

[4] The complaint contains no facts supporting any verbal agreement between Plaintiff and Defendants. Further, because a written contract exists, any assertions about an "implied-in-fact" contract (even if any did exist) would not apply.

The case is brought to federal court based on diversity jurisdiction and therefore this court is required to apply New Mexico law. *See Armijo v. Ex Cam, Inc*., 843 F.2d 406 (10th Cir. 1988) (In a diversity action, federal courts are required to apply the law of the forum state).

**DISCUSSION**

Defendants contend that Counts 1, 2, 3, 6, 7, 8, 10 and 11are time-barred. They offer other grounds for dismissal as to Counts 4.

Plaintiff contends that his claims are not time-barred on two grounds. First, he relies on the federal discovery rule, claiming that he did not discover the "alleged events" until after the limitations period expired. *See Roberts v. Southwest Community Health Servs*., 114 N.M. 248, 257 (1992) (cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause). *See* Doc. 42 at 6. Second, Plaintiff claims that the limitations period does not apply in this case because he previously filed a lawsuit in Wyoming federal district court on February 20, 2018, making his claims timely under New Mexico's "savings statute":

> If, after the commencement of an action, the plaintiff fails therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

NMSA §37-1-14; *see* Doc. 42 at 2. On May 8, 2018, the lawsuit was eventually dismissed based on lack of personal jurisdiction. *See* Docs. 41-1 (copy of Wyoming federal lawsuit) & 41-2 (May 8, 2018 Order granting Defendants' motion to dismiss).

Both of Plaintiff's tolling arguments fail. Plaintiff's "delayed discovery" argument is contradicted by his own allegations in the complaint. Based on those allegations, which the Court views as true, *see Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), Plaintiff knew about the alleged false results in March 2013 when he discovered them in Kemler's

notebook. Doc. 3, ¶¶63 & 75.  Thus, Plaintiff was aware of the basis for the allegations in mid-March. *See also* Doc. 54 at 17 (previously rejecting Plaintiff's "delayed discovery" argument).

As for Plaintiff's other argument regarding New Mexico's "savings statute," the Court has already determined that the circumstances of Plaintiff's filing of the Wyoming lawsuit constitute "negligence in prosecution" which bars him from relying on the savings statute to save his claims—even if those claims would be rendered timely under the statute.  Plaintiff previously raised this argument in responding to Defendant Cook's motion to dismiss, and the Court's full analysis is contained in that decision granting Defendant's motion.  *See* Doc. 54 at 11-13.

With no further meritorious arguments left to support Plaintiff's tolling theories, what remains is an examination of the claims to determine whether they are indeed time-barred.

## I.     Timeliness of Claims

The Court first addresses Counts 1, 2, 3, 6 and 7, and then moving on to Counts 4, 8, 10 and 11.

### A.     Count 1: Intentional Misrepresentation of Material Facts

In his claim for intentional misrepresentation of material facts, Plaintiff states that, using Floto's "proprietary science," in March 2013, Defendants Patterson and Kemler furnished test results about the location of gold that were intended to intentionally misrepresent the authentic data that was collected in the field (Doc. 3, ¶148).  Allegations of fraud must be brought within four years.  NMSA ¶37-1-4.[5]  Plaintiff filed this federal case on October 19, 2018, outside of the limitations period for such claims. Also, since the Wyoming case was filed on February 20, 2018, even the New Mexico savings statute could not rescue this claim.  Because the Court dismisses

---

[5] The statute provides a four-year limitations period for claims "founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years." NMSA §37-1-4.

8

this claim on grounds of timeliness, Defendants' other arguments going to the merits of the claim need not be addressed.[6]

B. Conversion

In his claim for conversion in Count 2, Plaintiff alleges that Defendants knowingly interfered with Plaintiff's rights to the gold and artifacts that remain on Black Mesa. Claims for conversion are also governed by a four-year limitations period. See NMSA §37-1-4 ("those [actions] brought for . . . conversion of personal property . . . within four years."). Because the events related to conversion occurred prior to September 2013, Plaintiff would have had to file suit alleging conversion by September 2017 to be timely. The Wyoming lawsuit was filed on February 20, 2018, and so even the New Mexico savings statute could not rescue these claims. This claim will be dismissed because it is untimely.

C. Count 3: Conspiracy

In Count 3, Plaintiff asserts that in April 2013, Defendants willfully conspired to cover up any illegal activity on the Black Mesa site, Doc. 3, ¶162, and that Defendants Patterson, Kemler, Melancon and Talks conspired to dishonor all contractual obligations.

The conspiracy claim can be summarily dismissed because it is not actionable in itself. Unlike a conspiracy in the criminal context, a civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own. *Ettenson v. Burke*, 130 NM 67, 72 (2000); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1205 (10th Cir. 2001) (citing *Reeves v. Wimberly*, 107 N.M. 231, 235 (N.M.Ct.App.1988) (the gist of a conspiracy action "is the damage arising from the act(s) done pursuant to the conspiracy").

---

[6] For Plaintiff's other claims as well, where they are dismissed on the basis of timeliness, the Court declines to address Defendant's other arguments.

Count III must also be dismissed because it is time-barred. Based on Plaintiff's allegations, he knew about the alleged false results in March 2013 when he discovered them in Kemler's notebook. Doc. 3, ¶¶63 & 75. Whether the conspiracy claim is brought as a fraud or tort claim, it is brought too late. Claims grounded in fraud must be brought within four years of the date when Plaintiff knew or should have known of the fraudulent statement. N.M.S.A. § 37-1-4 ("those brought . . . for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years."). Under the statute of limitations for torts, the conspiracy claim would be even more untimely, as that limitations period is three years. N.M.S.A. § 37-1-8. Thus, Plaintiff's claim was time-barred, even before he filed the federal lawsuit in Wyoming.

D. <u>Count 6: Fraudulent Inducement</u>

Plaintiff alleges a fraudulent inducement claim in Count 6 in that Defendants lured him into signing the Joint Venture Agreement. This claim is time-barred under New Mexico's four-year limitations period for claims based on fraud. *See* NMSA §37-1-4.

E. <u>Count 7: Tortious Interference with Contractual Relations</u>

Count 7 appears to be directed to Defendants Fishman, Caster and Floto only, and it contains no allegations involving the other movants. Because the events related to this claim occurred in September 2013, it is untimely, whether considered as a contract claim (four years under NMSA §37-1-4) or a tort claim (three years under NMSA §37-1-8).

**II. Contract Claims**

A. <u>Count 4: Breach of Written Contract</u>

Under New Mexico law, actions founded on a written contract is six years. NMSA 1978 §37-1-3 ("Actions founded upon any bond, promissory note, bill of exchange or other contract in writing shall be brought within six years). The Joint Venture Agreement was signed on November

26, 2012, and the federal complaint was filed on October 19, 2018, just under the six-year limitations period by a month or so. Therefore, Count 4 withstands Defendants' motion to dismiss on grounds on timeliness.

Defendants also attempt to argue the merits of Count 4, but at this stage, the Court must accept Plaintiff's allegations as true. Defendants describe Plaintiff's claims about finding buried treasure as implausible, *see* Doc. 37 at 17, and while the Court has previously admitted that lawsuits about buried treasure is a bit out of the ordinary, that uniqueness is insufficient for dismissal:

> Defendants argue that these allegations of stolen gold are implausible and incredible and indeed, one may bring a certain amount of healthy skepticism to tales of hidden pirates' loot—except that Defendants apparently shared Plaintiff's hopes of finding buried treasure.

Doc. 54 at 15. The Expedition Defendants contend that no court can provide Plaintiff with "any kind of relief," Doc. 37 at 17, but do not claim that the treasure hunt expedition itself is a complete fabrication. They describe Plaintiffs' allegations as incredible, but they do not dispute the Expedition signatures that are on the Joint Venture agreement. Therefore, Defendants' motion is denied as to Count 4.

### B. Count 8: Breach of Covenant of Good Faith and Fair Dealing

Count VIII asserts that Defendants violated the implied covenant of good faith and fair dealing. Under New Mexico law, a duty of good faith and fair dealing exists in every contract. *See Jaynes v. Strong Thorne Mortuary, Inc.*, 124 N.M. 613, 954 P.2d 45, 49 (1997). The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994).

The Court has denied Defendants' motion to dismiss as to Count 4, which is based on the written Joint Venture agreement. Because Count 8 is related to that agreement, Count 8 also survives Defendants' motion.

C. Equity-Based Claims: Counts 10 and 11

Counts 10 and 11 are grounded in equity. Plaintiff claims that he invested over $120,000 in cash, his personal time and his knowledge during the Black Mesa expedition. His provided the ability to operate scientific used on the site that directly resulted in the discovery of the Spanish Vaults, and this conferred substantial benefit on Defendants. Count 10 is a promissory estoppel claim, wherein Plaintiff relied on misrepresentations made by Defendants Cook, Patterson, Kemler, Gen Next, Fishman, Caster, Antiquity and Melancon and in doing so, lost his investment, resulting in Defendant's unjust enrichment (Count 11).

Similar to the breach of covenant claim, these equity-based claims survive dismissal under Rule 12(b)(6) because the written contract claims were timely filed.[7]

## III. Jurisdictional Arguments

Defendants also claim that Plaintiff has filed this lawsuit "in the wrong state." *See* Doc. 37 at 17 ("The Plaintiff is filing in the wrong state"). They contend claim that Plaintiff consented to jurisdiction in the state of Florida, based on language in the Joint Venture stating that the agreement would be "conducted and operated pursuant to the Uniform Partnership Act of the State of Florida. . . ." *See* Doc. 3 at 54.

---

[7] The Court has dismissed the equity-based claims that were asserted against certain defendants in this case, for example, the Cook defendants. *See* Doc. 54 at 18-19. However, the equity directed at the Cook defendants were premised on an alleged denial of Plaintiff's access to the Black Mesa site, which occurred on or before September 2013. Plaintiff's equity claims could not proceed where the contract and tort claims were time-barred. *See Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 675 (10th Cir. 2016) (where primary claims are barred by a legal statute of limitations, the exercise of equity jurisdiction to determine the underlying facts would also be barred). With regard to the movants here, however, the alleged conduct was in connection with breach of a *written* contract, for which the limitations period is six years.

The Court liberally construes this argument as a kind of jurisdictional challenge. However, Defendants have not given the Court much to go on and the Court is not required to fashion Defendants' arguments for them. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (Even for a pro se litigant, the court is not permitted to craft arguments on plaintiff's behalf); *see Smith v. DeVry University, Inc*., 554 Fed.Appx. 776, 777 (10th Cir. 2014) (unpublished) (the court "do[es] not assume the role of advocate and craft arguments for the pro se litigant."), citing *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

To the extent Defendants challenge subject matter jurisdiction, that challenge must fail. New Mexico courts normally look to the place of contracting for the applicable contract law. *Tucker v. R.A. Hanson Co.,* 956 F.2d 215, 217 (10th Cir. 1992). This is not to say that the lawsuit itself must be filed in that place—just that the *law* that is applied to issues relating to the contract is the law of that state. In this case, the Joint Venture agreement provides that Florida law is the operable law for issues that arise from that agreement, such as the breaches of that contract alleged by Plaintiff. This means only that in addressing those claims of breach, this Court would apply Florida law in its analysis in order to determine whether the agreement was in fact breached. *See Yavuz v. 61 MM, Ltd*., 576 F.3d 1166, 1178 (10th Cir. 2009) (Absent a choice of law provision, a federal court sitting in diversity must apply the conflict of law provisions of the forum state). Therefore, the choice of law provision does not dictate what *state* in which a lawsuit must be filed.

Having dispensed with that notion, the Court turns to the question of subject matter jurisdiction. The district courts of the United States are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Services, Inc*., 125 S.Ct. 2611, 2616–17 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). In order to provide a federal forum for plaintiffs who seek to

vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. *See* 28 U.S.C. § 1332. Further, to ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires also that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.

The Complaint alleges that Defendants are residents of New Mexico, Wyoming, Tennessee, Texas and Florida, *see* Doc. 3 at 3-6, and Defendants have provided the Court with no argument or facts that call into question any of these assertions. Therefore, the first part of the diversity requirement is met. Plaintiff has not specified any monetary amount of damages in the complaint, but it is not unreasonable to assume that caches of gold treasure and antiquities from buried pirate booty would have a value over $75,000.00—and so this requirement is also met. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (term "amount in controversy" has required a party seeking federal jurisdiction to show only and much more modestly that "a fact finder might legally conclude" that damages exceed the statutory amount; and that to justify dismissal under this standard "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount"). Therefore, this Court has subject matter jurisdiction over this lawsuit.

It is unclear whether Defendants may be attempting to present challenges to either personal jurisdiction or choice of venue, but the Court declines to venture farther into the role as Defendants' advocate. *See Nash v. Wal-Mart Stores, Inc.*, 709 F. App'x 509, 510 (10th Cir. 2017)

(pro se status of party does not require court to serve as that party's advocate) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, the Court will take just one more step and note that, given Defendants' presence here in New Mexico for purpose of digging for buried treasure, Defendants would be hard-pressed to argue that this Court lacks personal jurisdiction over them.

## CONCLUSION

In sum, the Court finds and concludes that the allegations in Counts 5 and 9 are directed toward other Defendants, and thus the Court grants Defendants' motion with regard to Counts and 9, which are dismissed against these Defendants under Rule 12(b)(6).

The Court further finds that Counts 1, 2, 3, 6 and 7 are dismissed under Rule 12(b)(6) either for untimeliness or because these claims fail to state a claim upon which relief can be granted, and the Court grants Defendants' motion as to those counts.

Finally, the Court finds that Counts 4, 8, 10 and 11 survive Defendants' motion both on timeliness and on the merits under Rule 12(b)(6).

**THEREFORE,**

**IT IS ORDERED** that the Expedition Defendants' Motion to Dismiss **(Doc. 37)** is hereby GRANTED IN PART and DENIED IN PART for reasons described above as follows:

(1) Defendants' motion is GRANTED as to Counts 5 and 9, which are hereby DISMISSED WITH PREJUDICE under Rule 12(b)(6);

(2) Defendants motion is GRANTED as to Counts 1, 2, 3, 6 and 7, which are dismissed either because they are untimely or because they fail to state a claim upon which relief can be granted under Rule 12(b)(6); and

15

(3) Finally, Defendants' motion is DENIED as to Counts 4, 8, 10 and 11 because they were timely failed and because they state a plausible claim under Rule 12(b)(6).

_____
CHIEF UNITED STATES DISTRICT JUDGE